IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSA SAMAN                           :
                                     :
    v.                               : Civil Action No. DKC 12-1083
                                     :
LBDP, INC., et al.                   :
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for review in this wage-and-hour law case is the parties' joint motion for approval of a settlement agreement that resolves Plaintiff Rosa Saman's claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). (ECF No. 28). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because the proposed settlement agreement represents a fair and reasonable resolution of a *bona fide* FLSA dispute, the parties' motion will be granted, and Plaintiff will be directed to file a petition for attorneys' fees and costs within fourteen (14) days.

**I. Background**

On April 10, 2012, Plaintiff filed a four-count complaint in this court against Defendants LBDP, Inc., d/b/a La Baguette de Paris; Unyong Lee a/k/a Un Yong Lee; and Edward S. Sokvary. (ECF No. 1). The original complaint alleged that, from August

23, 2009 through February 25, 2012, Plaintiff worked as an hourly employee at LBDP, a bakery in Montgomery County, Maryland. The complaint also asserted that Ms. Yong and Mr. Sokvary are the owners and operators of LBDP who "created, maintained and administered" the company's employment policies; had "the power to hire and fire employees"; controlled scheduling; and "handle[d] payroll responsibilities." (*Id.* ¶ 3). Plaintiff alleged that, throughout her employment, she "typically work[ed] between 55-65 hours per week and sometimes was required to work in excess of 100 hours per week," but "Defendants refused to pay [her] at the rate of one-and-one half (1½) times her regular rate of pay for hours worked per week in excess of forty (40)." (*Id.* ¶¶ 12, 15). Based on these allegations, Plaintiff asserted claims for violations of three statutes: the FLSA; the Maryland Wage and Hour Law, Md. Code, Lab. & Empl. §§ 3-401, *et seq.* ("MWHL"); and the Maryland Wage Payment Collection Law, Md. Code, Lab. & Empl. §§ 3-501, *et seq.* ("MWPCL"). (*Id.* ¶¶ 20-39).[1] Plaintiff also asserted a claim for wrongful termination under Maryland law based on allegations that Defendants improperly terminated her employment after she refused to abandon her efforts to secure a peace order against the spouse of another LBDP employee. (*Id.* ¶¶ 16-19, 40-46).

---

[1] Plaintiff did not seek to bring any of her claims on behalf of similarly situated others.

2

On May 11, 2012, Defendants filed a partial motion to dismiss, arguing that the complaint failed to state a claim under the MWPCL and that the court lacked supplemental jurisdiction over Plaintiff's wrongful termination claim. (ECF No. 9). Plaintiff voluntarily dismissed her MWPCL claim (ECF No. 12), but opposed Defendants' motion to the extent it sought dismissal of her wrongful termination claim (ECF No. 13). In a Memorandum Opinion and Order filed on November 7, 2012, the court dismissed Plaintiff's wrongful termination claim for lack of subject matter jurisdiction. (ECF Nos. 16 & 17).

On November 21, 2012, Defendants filed their answer to the complaint, which asserts a number of affirmative defenses, including: (1) that "Plaintiff Fraudulently Encouraged Defendants to Falsely Record Her Overtime Records For Her Own Tax Benefit"; (2) that "Liquidated Damages Cannot Be Assessed Because Defendant Had Reasonable Grounds for Compensating Plaintiff In The Manner In Which It Did"; and (3) that the doctrine of *in pari delicto* bars Plaintiff's recovery, in whole or in part. (ECF No. 18, at 5-6). Concurrently with their answer, Defendants sought an order staying all discovery and referring the case to a United States Magistrate Judge for early mediation. (ECF No. 19). After Plaintiff indicated that she did not oppose mediation (ECF No. 22), the case was referred to Magistrate Judge Charles Day on December 10, 2012 (ECF No. 23).

3

On February 4, 2012, Plaintiff's unopposed motion for leave to file an amended complaint that corrects a misnomer was granted. (ECF Nos. 25 & 26).

On April 9, 2013, the parties participated in a settlement conference before Judge Day. On or about May 3, 2013, the parties executed a settlement agreement ("the Agreement") that resolves both this lawsuit and a second lawsuit filed by Plaintiff against Defendants in the Circuit Court for Montgomery County, Maryland, which asserts a claim for abusive discharge and is captioned *Rosa Saman v. LBDP, Inc., et al.*, No. 370562-V. (ECF No. 28-3). On May 8, 2013, the parties jointly moved for approval of that portion of the Agreement that resolves the FLSA claims asserted by Plaintiff in this action. (ECF No. 28).

With respect to Plaintiff's FLSA claims, the Agreement provides that, upon court approval, Defendants will pay Plaintiff $28,000 to settle all claims asserted in the instant lawsuit. (ECF No. 28-3 ¶ 1). The Agreement also requires Defendants to pay Plaintiff for attorneys' fees and costs incurred in prosecuting her FLSA claims, in an amount to be determined by this court following Plaintiff's submission of a motion requesting such fees and costs. (*Id.* ¶ 2.d). Separately, the Agreement requires Defendants to pay $15,000 to Plaintiff to settle her economic and emotional distress claims asserted in the state court lawsuit. (*Id.* ¶ 1). The Agreement

also provides that Mr. Sokvary will sign a reference letter that Plaintiff can share with prospective employers. (*Id.* ¶ 2.g).

In exchange, Plaintiff agrees to the following: (1) a general release of all claims against Defendants; (2) upon court approval of the Agreement, dismissal of her state court action with prejudice; and (3) upon payment by Defendants of all amounts due under the Agreement (including any court-awarded attorneys' fees and costs), dismissal of this lawsuit with prejudice. (*Id.* ¶¶ 4-5).[2] The Agreement also contains a "Mutual Non-Disparagement / Non-Publicity" provision, pursuant to which Plaintiff agrees not to proactively disseminate information about either lawsuit. (*Id.* ¶ 7).

A. **Analysis**

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the statute's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights

---

[2] The parties have since agreed that the fee determination will be embodied in a final order. (*See* ECF No. 31).

5

to seek liquidated damages upon accepting the full amount of the wages owed.  *See* 29 U.S.C. § 216(c).  Under the second exception, a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching."  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*.  *See, e.g.*, *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D.Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010).  Pursuant to *Lynn's Food Stores*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions."  *Lynn's Food*, 679 F.2d at 1355.  Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute."  *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2 (D.Md. Aug. 31, 2011) (citing *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-

6

42 (M.D.Fla. 2010)). Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors, including: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . .; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009) (collective action); *see also Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 09-cv-00058, 2010 WL 1813497, at *1 n.1 (W.D.Va. May 5, 2010) (applying the same factors to a settlement that involved only individual FLSA claims). Finally, where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Ko-Me, LLC*, 2011 WL 3880427, at *3 (internal quotation marks omitted).

**B.** *Bona Fide* **Dispute**

Here, the pleadings, along with the parties' representations in subsequent court filings, establish that a *bona fide* dispute exists as to Defendants' liability under the FLSA. *See Lomascolo*, 2009 WL 3094955, at *16-17 (examining the complaint, answer, and the parties' recitals in the proposed settlement to conclude that a *bona fide* dispute existed). In their joint motion for approval, the parties reaffirm that genuine disputes continue to exist as to: (1) the proper amount of unpaid overtime wages due – specifically, Plaintiff asserts that she is owed approximately $33,000 in unpaid overtime damages, plus liquidated damages, whereas Defendants maintain their exposure is no greater than $16,000; (2) whether any FLSA violation by Defendants could be deemed willful so as to support an award of liquidated damages; and (3) whether the doctrine of *in pari delicto* could bar recovery, in whole or in part, based on Defendants' assertions that Plaintiff requested to be paid in the manner alleged for tax purposes. (ECF No. 28, at 3-4).

Although neither party provides any detailed calculations as to how they arrived at their "exposure" figures, the genuineness of their dispute is evident. Of particular significance is Defendants' continued reliance on the common law doctrine of *in pari delicto*, which can bar recovery under a federal statute where (1) the plaintiff bears at least

8

substantially equal responsibility for the violations she seeks to redress, and (2) preclusion of the suit would not substantially interfere with the statute's policy goals. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985). There is no clear authority addressing whether or how the doctrine of *in pari delicto* applies in FLSA cases involving the circumstances alleged by Defendants here (*i.e.*, where an employee affirmatively requests a pay structure that violates the FLSA for some personal benefit). *See, e.g.*, *Chen v. Republic Rest. Grp.*, No. 07-3307, 2008 WL 2477523, at *1 (S.D.N.Y. June 19, 2008) (declining to reach the question of whether the doctrine of *in pari delicto* is available to an employer whose employees purportedly asked to be underpaid for tax purposes); *cf. Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306-08 (11th Cir. 2013) (holding that the *in pari delicto* doctrine did not bar employees' recovery where their alleged wrongdoing was unconnected to the employer's "decision whether to pay them overtime wages in accordance with the FLSA," but declining to decide whether the doctrine "may ever be applied to bar recovery" under the statute given its remedial nature). Pursuant to *Lynn's Food Stores* and its progeny, such uncertainty confirms the existence of a *bona fide* dispute as to the extent of Defendants' FLSA liability (if any) in this case.

**C.   Fairness & Reasonableness**

Upon review of the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Agreement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute.  Although the parties agreed to settle at an early stage in the proceedings and before conducting any formal discovery, they represent that Defendants produced payroll records in connection with mediation and that all counsel are "satisfied that they have had ample opportunity to evaluate and consider the viability of claims and defenses raised in this case."  (ECF No. 28, at 5).  In particular, Plaintiff's counsel avers that he "reviewed sufficient wage/hour records, of sufficient quantity and quality to perform the necessary calculations to determine the potential range of recovery in this case."  (ECF No. 28-2, Mirsky Decl. ¶ 3).  The parties also represent that, in light of the risks associated with proceeding, they wish to avoid the costs of formal discovery, dispositive motions, and a possible trial.  (ECF No. 28, at 5).  Thus, the parties have had sufficient opportunity to "to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case."  *Lomascolo*, 2009 WL 3094955, at *11.

Additionally, there is no evidence that the Agreement – reached after a day of settlement proceedings before Judge Day – is the product of fraud or collusion. *Id.* at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). Rather, the Agreement appears to be the product of vigorous representation and negotiations by counsel for both parties. Furthermore, counsel are competent and experienced, as evidenced by their filings submitted to date and their prior involvement in federal litigation in this district. Plaintiff's counsel also avers that he provided his client with a copy of the Agreement, explained its provisions in lay terms, and recommended that she accept the Agreement, which she did, without objection. (ECF No. 28-2, Mirsky Decl. ¶ 4). Although "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed," *Lomascolo*, 2009 WL 3094955, at *12 (internal quotation marks omitted), these representations provide further support for the reasonableness of the Agreement.

As to the relationship between the amount of the settlement and Plaintiff's potential recovery, the Agreement requires Defendants to pay $28,000 to Plaintiff to settle her remaining claims in this lawsuit. Given that Plaintiff's counsel estimated her FLSA damages to be approximately $33,000,

11

including both unpaid overtime wages and liquidated damages, the settlement amount of $28,000 – which, as explained in more detail below, is Plaintiff's alone to keep – represents 84.4 percent of her potential recovery. In light of the risks and costs associated with proceeding further and Defendants' potentially viable defenses, this amount appears to "reflect[] a reasonable compromise over issues actually in dispute." *Lomascolo*, 2009 WL 3094955, at *8.

The Agreement does contain a broad general liability release, pursuant to which Plaintiff agrees to waive, release, and discharge Defendants "from all claims . . . of any and every nature whatsoever, as a result of actions or omissions occurring through the effective date of this Agreement." (ECF No. 28-3 ¶ 5). Some courts have held that an overly broad release provision can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint. *See, e.g.*, *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1352 (M.D.Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen-Chaplin v. Fanklin Am. Mortg. Co.*, No. 10-5243 SBA, 2012 WL 6629608, at *3 (N.D.Cal. Dec. 19, 2012) (rejecting FLSA settlement agreement where the release "provision does not track the breadth of the allegations in this action and releases

12

unrelated claims"). Where, however, a settlement agreement compensates an employee both for alleged violations of the FLSA and for other claims that are unrelated to the FLSA or comparable state wage-and-hour statutes, courts have approved broadly worded general release provisions. *See, e.g.*, *Robertson v. Ther-Rx Corp.*, No. 2:09-cv-1010-MHT (WO), 2011 WL 1810193, at *2 (M.D.Ala. May 12, 2011) (approving settlement agreement that contained a general release where the plaintiff received separate compensation for her claims under Title VII and the Family and Medical Leave Act); *cf. Bright v. Mental Health Res. Ctr., Inc.*, No. 09-cv-1010, 2012 WL 868804, at *2 (M.D.Fla. Mar. 14, 2012) (approving FLSA settlement agreement that contained a mutual general release where the employer had asserted numerous counterclaims against the employee seeking to recover allegedly fraudulent travel reimbursement payments because "[the employer's] willingness to forego its claims against [the plaintiff] provides the additional justification needed to support the inclusion of a general release"). Because the Agreement here provides separate compensation to Plaintiff to resolve her wrongful termination claim, the broad general release provision does not render the Agreement unreasonable as to Plaintiff's FLSA claims.[3]

---

[3] This Memorandum Opinion does not, however, make any

13

**D.   Attorneys' Fees**

Finally, the Agreement's provisions regarding attorneys' fees and costs must also be assessed for reasonableness. The Agreement provides that – separate and apart from the $28,000 payment to Plaintiff – Defendants will, pursuant Section 216(b) of the FLSA, pay attorneys' fees and costs incurred by Plaintiff in prosecuting her FLSA claims, in an amount to be determined by the court following Plaintiff's submission of a request for such fees and costs after approval of the Agreement. (ECF No. 28-3 ¶ 2.d).[4]  Defendants are free to oppose Plaintiff's request in accordance with applicable procedural rules, but the "outcome of any proceeding relating to [Plaintiff's motion]" shall not terminate or otherwise affect the Agreement. (*Id.*). In his declaration, Plaintiff's counsel confirms that "[t]he FLSA recovery received by the Plaintiff is hers to keep and use, and

---

findings regarding the reasonableness, fairness, or adequacy of the Agreement as it relates to the parties' resolution of the wrongful termination claim. *See, e.g.*, *Murphy v. RGIS Inventory Specialists, LLC*, No. 07-cv-89-28JGG, 2007 WL 2412996, at *1 n.1 (M.D.Fla. Aug. 21, 2007) (declining to consider the fairness of that portion of a settlement agreement that resolved the plaintiff's unrelated state law claim for unemployment benefits).

[4] The parties stipulate in the Agreement that Plaintiff is a prevailing party for purposes of Section 216(b), which provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

are only subject to deductions to the extent the law requires taxes to be withheld." (ECF No. 28-2, Mirsky Decl. ¶ 2).

Because the Agreement vests the court with discretion to determine an appropriate amount of attorneys' fees and costs under Section 216(b), and because that determination will not otherwise affect the Agreement, it is clear that the parties agreed upon the fee award "separately and without regard to the amount paid to [P]laintiff." *Kianpour v. Rest. Zone, Inc.*, No. DKC-11-0802, 2011 WL 5375082, at *3 (D.Md. Nov. 4, 2011); *see also Gionfriddo v. Jason Zink, LLC*, No. RDB-09-1733, 2013 WL 1222350, at *1 (D.Md. Mar. 25, 2013) (noting that it had previously granted approval of an FLSA settlement that gave the court discretion to determine the fee award).

Ultimately, of course, any award of attorneys' fees to Plaintiff will turn on application of the traditional lodestar methodology factors. The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, the specific facts of the case are to be considered in calculating a reasonable figure. In assessing reasonableness, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). Thus, Plaintiff is advised that, in submitting her request for attorneys' fees and costs pursuant to Paragraph 2.d of the Agreement, she should provide all documentation necessary to make a lodestar determination, including but not limited to (1) declarations establishing the hours expended by counsel, broken down for each task; and (2) support for the reasonableness of counsel's hourly rate. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal quotation marks omitted). Moreover, any request for

attorneys' fees must comport with the requirements and guidance set forth in Local Rule 109 and Appendix B to the Local Rules.

**II. Conclusion**

For the foregoing reasons, the parties' joint motion to approve the Agreement will be granted. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
