IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSA SAMAN                           :

                                     :

    v.                               :    Civil Action No. DKC 12-1083

                                     :

LBDP, INC., et al.                   :

                                     :

## MEMORANDUM OPINION

Presently pending and ready for review in this wage and hour law case is a motion for attorneys' fees and costs filed by Plaintiff Rosa Saman. (ECF No. 34). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion will be granted in part and denied in part.

## I.    Background

Plaintiff brought claims under the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), the Maryland Wage Payment and Collection Act ("MWPCL"), and for wrongful termination against Defendants LBDP, Inc. d/b/a La Baguette De Paris, Unyoung Lee, and Edward Sokvary, seeking to recover unpaid wages and bonuses. The original complaint alleged that, from August 23, 2009 through February 25, 2012, Plaintiff worked as an hourly employee at LBDP. Ms. Lee and Mr. Sokvary were owners and operators of LBDP who "created, maintained and

administered" the company's employment policies; had "the power to hire and fire employees"; controlled scheduling; and "handle[d] payroll responsibilities." (ECF No. 1 ¶ 3). Plaintiff alleged that, throughout her employment, she "typically work[ed] between 55-65 hours per week and sometimes was required to work in excess of 100 hours per week," but "Defendants refused to pay [her] at the rate of one-and-one half (1½) times her regular rate of pay for hours worked per week in excess of forty (40)." (*Id.* ¶¶ 12, 15).

Defendants filed a partial motion to dismiss, arguing that the complaint failed to state a claim under the MWPCL and that the court lacked supplemental jurisdiction over Plaintiff's state law wrongful termination claim. (ECF No. 9). Plaintiff voluntarily dismissed her MWPCL claim (ECF No. 12), but opposed Defendants' motion to the extent it sought dismissal of her wrongful termination claim (ECF No. 13). In a Memorandum Opinion and Order filed on November 7, 2012, the court dismissed Plaintiff's wrongful termination claim for lack of subject matter jurisdiction. (ECF Nos. 16 & 17).

On November 21, 2012, Defendants filed their answer to the complaint. (ECF No. 18). Concurrently with their answer, Defendants sought an order staying all discovery and referring the case to a United States Magistrate Judge for early

mediation.  (ECF No. 19).  After Plaintiff indicated that she did not oppose mediation (ECF No. 22), the case was referred to Magistrate Judge Charles Day on December 10, 2012 (ECF No. 23). On February 4, 2013, Plaintiff's unopposed motion for leave to file an amended complaint that corrected a misnomer was granted. (ECF Nos. 25 & 26).

On April 9, 2013, the parties participated in a settlement conference before Judge Day.  On or about May 3, 2013, the parties executed a settlement agreement that resolved both this lawsuit and a second lawsuit filed by Plaintiff against Defendants in the Circuit Court for Montgomery County, Maryland, which asserted a claim for abusive discharge.  (ECF No. 28-3).[1] The settlement agreement provided that Defendants will pay Plaintiff $28,000 to settle her FLSA and MWHL claims.  The settlement agreement also requires Defendants to pay Plaintiff for attorneys' fees and costs incurred in prosecuting her FLSA claims, in an amount to be determined by this court following Plaintiff's submission of a motion requesting such fees and costs.  (*Id.* ¶ 2d).  In a Memorandum Opinion and Order, the court approved the settlement agreement, providing Plaintiff fourteen (14) days to file a motion for attorneys' fees and

_____

[1] The state case is captioned *Rosa Saman v. LBDP, Inc., et al.*, No. 370562-V.

3

costs. (ECF Nos. 32 & 33). Plaintiff filed such a motion on June 24, 2013, requesting $34,098 in attorneys' fees and $477.68 in costs. (ECF No. 34). On July 11, 2013, Defendants filed an opposition, objecting only to the attorneys' fees (ECF No. 35), and Plaintiff replied on July 26, 2013 (ECF No. 36). Plaintiff sought additional fees incurred in preparing the reply, to which Defendants moved for leave to file a surreply to challenge this request. The court granted this request (ECF No. 39), and the Defendants filed their surreply on November 1, 2013 (ECF No. 40).

## II. Analysis

In any action under the FLSA, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).[2] The payment of attorneys' fees and costs to employees who prevail on FLSA claims is mandatory. "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short,* 730 F.2d 136, 141 (4th Cir. 1984). The MWHL also allows for the recovery of attorneys' fees and costs. *See* Md. Code Ann., Lab. & Empl. § 3-427 ("If a court determines that

_____

[2] The parties agreed that Plaintiff is deemed to be the "prevailing party" for purposes of the attorneys' fees and cost provisions of the FLSA. (ECF No. 28-3 ¶ 2d).

an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs.").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008).[3] In deciding what constitutes a "reasonable" number of hours and a "reasonable" rate, numerous factors may prove pertinent, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client;

---

[3] Maryland courts also use the "lodestar" method when determining attorneys' fees under fee-shifting statutes. *See, e.g.*, *Friolo v. Frankel*, 373 Md. 501, 504-05 (2003).

> and (12) attorneys' fees awards in similar
> cases.

*Robinson v. Equifax Info. Servs.,* 560 F.3d 235, 243–44 (4th Cir. 2009) (*quoting Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978)).[4] "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Id.* at 244 (*quoting Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award," including, for example, "affidavits of

---

[4] The Supreme Court of the United States recently appeared to question the approach adopted by the United States Court of Appeals for the Fourth Circuit in *Kimbrell's* – originally set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) – describing it as an "alternative" to the lodestar method and explaining that it provides too little guidance for district courts and places too great of an emphasis on subjective considerations. *See Perdue v. Kenny A.,* 559 U.S. 542, 551-52 (2010) ("[T]he lodestar method is readily administrable, and unlike the *Johnson* approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." (internal citations omitted)). Nonetheless, "the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate"; "[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee." *Spencer v. Cent. Servs., LLC,* No. CCB-10-3469, 2012 WL 142978, at **5-6 (D.Md. Jan. 13, 2012) (internal quotations marks and citations omitted).

other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 244, 245 (internal quotation marks omitted).

Plaintiff's attorneys are: Mr. Scott Mirsky, a partner at the law firm of Bromberg Rosenthal in Rockville, Maryland; Ms. Sherry Zangueneh, an associate of the same firm; and Ms. Kimberly Jones, a paralegal of the same firm. They represent that they spent 122.8 hours on this case and request the following hourly rates: $300 for Mr. Mirsky, $150 for Ms. Zangueneh, and $90 for Ms. Jones. (ECF No. 34-1, at 3). The 122.8 hours was divided among the three in the following manner: 106.6 for Mr. Mirsky, 13.7 hours for Ms. Zangueneh, and 0.7 hours for Ms. Jones. (ECF No. 34-5).[5] Defendants dispute both the hourly rates and the hours expended. These issues will be considered in turn.

### A. Hourly Rate

Plaintiff submits an affidavit by Mr. Mirsky in support of the requested rate. Mr. Mirsky avers that he is a partner with the firm with extensive experience in employment disputes, who has been practicing law for over fifteen years. Ms. Zangueneh

_____

[5] Plaintiff's attorneys are not seeking fees for 1.8 of the 122.8 hours worked. (ECF No. 34-5).

is an associate with the firm who has practiced law for seven years and has assisted Mr. Mirsky in many previous employment law cases. In support of their requested hourly rates, Plaintiff's attorneys submit that Mirsky, Zangueneh, and Jones's proposed rates in this case are identical to the rates Bromberg Rosenthal charge to all of its clients who retain the firm on an hourly basis and within the court's guidelines regarding hourly rates. (ECF Nos. 34-1, at 3; 34-3 ¶¶ 5-6); Local Rules, Appendix B.[6]

Defendants argue that Mr. Mirsky's $300/hour billing rate is unreasonable, and instead request an hourly rate of $275/hour.[7] They argue that the reason why an experienced attorney is justified in receiving a high rate is because his very experience will result in economies of time due to the lack of need for extensive background legal research. (ECF No. 35,

---

[6] The guidelines provide that lawyers admitted to the bar for fifteen (15) years or more have an hourly rate between $275 and $400. The hourly rate of lawyers admitted to the bar for five (5) to eight (8) years is $165 to $250. Paralegals' hourly rate is between $95 and $115. The local rules point out that "[t]hese rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees. The factors established by case law obviously govern over them."

[7] In a petition filed October 21, 2011 – only five months before he began work on this case – Mr. Mirsky stated that his hourly rate was $275/hour. *Zhou v. Metro. Life Ins. Co.*, No. AW 09-1516, ECF No. 44.

at 14 (*citing Buffington v. Balt. Cnty., Maryland*, 913 F.2d 113, 130 (4th Cir. 1990)). According to the Defendants, such efficiencies were not present here, as evidenced by Plaintiff's attorneys claiming 122.8 hours on what Defendants characterize as a "straightforward" FLSA case. Additionally, Defendants point to the absence of any supporting affidavits from counsel in the community that the amount of time expended was appropriate for a case of this type. (*Id.*).

Defendants seem to be confusing the prevailing *rate* for work of this type with the prevailing amount of *hours* worked for such straightforward FLSA cases. There is a requirement on Plaintiff to produce evidence only of the former, not the latter. Plaintiff's attorneys do not need to employ a fellow practitioner to go through the record and determine what would be an appropriate amount of time spent.

Nevertheless, Plaintiff's submission as to rate falls short. There is a requirement that, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award," *Plyler*, 902 F.2d at 277, such as "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the

relevant community," *Robinson*, 560 F.3d at 245. Plaintiff was explicitly reminded of this requirement in an earlier opinion in this case, (ECF No. 32, at 15-17), but she failed to follow the opinion's clear roadmap. Accordingly, Mr. Mirsky's hourly rate will be reduced to $275/hour.

### B. Hours Worked

In terms of the hours worked, Plaintiff's attorneys provide itemized time records that list the date of the work, who did the work, the time spent, and a brief description of the work done. (*See* ECF No. 34-4). They divide the litigation into six stages: Case Development, Pleadings, Discovery, Motions Practice, Alternative Dispute Resolution, and Fee Petition Preparation. Defendants object to the amount of work done at each stage.

As an initial matter though, it is necessary to consider the relationship of Plaintiff's successful claims with her unsuccessful claims. In cases where some of a plaintiff's claims prevail and others fail, the court must subtract hours spent on those unsuccessful claims that are "distinct in all respects from his successful claims. . . . Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."

10

*Hensley*, 461 U.S. at 440. A claim is distinctly different if it is "based on different facts and legal theories." *Id.* at 434.

Plaintiff was unsuccessful in this court on two claims: MWPCL and wrongful termination. The former was voluntarily dismissed by Plaintiff and this court dismissed the latter for lack of subject matter jurisdiction. The MWPCL claim is sufficiently related to Plaintiff's successful FLSA and MWHL claims. All three involve Plaintiff's wages and Defendants' payment, or lack thereof, of those wages to Plaintiff. Therefore, the MWPCL claim is not so distinct that any work performed on it will be subtracted from the eligible hours worked.

The wrongful termination claim, however, is entirely distinct. That claim arises from Plaintiff's allegation that Defendants terminated her employment for obtaining a temporary restraining order against a fellow employee after he allegedly assaulted her. (ECF No. 1 ¶¶ 16-19). This is entirely distinct from her wage and hour claims and will be subtracted from the hours worked. Plaintiff's attorneys acknowledge that they are not entitled to fees for work on the wrongful termination claim and represent that they have "endeavored to only include billing items related to Ms. Saman's overtime claims." (ECF No. 34-3 ¶ 10). A review of the attorneys' itemized time records reveals

11

that many of the entries specifically reference work done on the FLSA claim or work undertaken after November 7, 2012, the day the wrongful termination claim was dismissed. Nevertheless, there are many entries before November 7, 2012 that do not reference specifically work on an overtime claim. While it may be unrealistic to expect an attorney to keep records so finely detailed that he could confidently represent exactly how many seconds of a telephone call were spent on one facet of a case as opposed to another, the law is clear that attorneys' fees incurred for work entirely distinct to the successful claims shall not be awarded. Therefore, in the absence of an indication that an entry was concerned with overtime claims exclusively,[8] a twenty-five (25) percent reduction will be exacted on all hours worked before the wrongful termination claim was dismissed.[9] This figure reflects the fact that one of Plaintiff's four claims was unsuccessful and entirely distinct and it is not entitled to attorneys' fees.

---

[8] For example, "Continued drafting demand letter; Reviewed client's time cards; Worked on spreadsheet of hours; Telephone calls to client regarding time cards." (ECF No. 34-4, at 2).

[9] For example, "Telephone call to client regarding status." (ECF No. 34-4, at 4).

### 1. **Case Development**[10]

Plaintiff seeks fees for thirty-nine hours at this stage of
the litigation, divided as follows: 36.1 hours for Mr. Mirsky,
1.9 hours for Ms. Zangueneh, and 0.7 hours for Ms. Jones.[11]
During this phase, the attorneys represent that they met with
Plaintiff, reviewed payroll documents, performed legal research
and investigated the facts of the case and Defendants.
Additionally, they met with Defendants' former counsel in an

---

[10] Defendants criticize Plaintiff's attorneys for engaging
in "block-billing." Block-billing is "a list of multiple tasks
performed within a single time entry that does not identify the
portion of work performed on each included task," *Miller v. U.S.
Foodservice, Inc.*, No CCB-04-1129, 2006 WL 2547212, at *1 (D.Md.
Aug. 30, 2006), such as the March 2, 2012 entry: "Initial
meeting with client; Legal research regarding FLSA issue;
Reviewed documents from client," (ECF No. 34-4, at 2).
Defendants' objection has some merit but not nearly the force
they desire. *Miller* involved a situation where only certain
fees were reimbursable. Judge Blake criticized plaintiff's use
of block-billing because it made it impossible to tell how much
time was spent on uncovered work, especially where the
corresponding descriptions of the work performed were vague
(*e.g.*, "emails"). 2006 WL 2547212, at *2. In the present case,
many of Defendants' claims of block-billing can be distinguished
by the fact that the multiple tasks, while lumped together in
one entry, are more descriptive than those in *Miller* and all
connect to Plaintiff's successful FLSA claim, for which
Plaintiff shall collect reasonable attorneys' fees. To the
extent that a work description is either unclear as to which
aspect of the case it concerns, or concerns work done on the
entire case, a 25% reduction will be taken for such work done
before the wrongful termination claim was dismissed on November
7, 2012.

[11] Plaintiff's attorneys are not seeking fees for 0.3 hours
worked at this stage.

attempt to settle the case. They submit that part of the hours incurred was due to the fact that Defendants' payroll system calculated work in fifteen-day periods. As FLSA violations are based on work done weekly, Plaintiff's attorneys had to examine each pay stub Plaintiff received in her two and a half year employment and convert the time worked to a weekly figure. (ECF No. 34-1, at 6-7).

As an initial matter, those time entries that involve work performed before November 7, 2012 in furtherance of the entire case will be reduced by 25% for the reasons discussed above. Only Mr. Mirsky did such work at this stage of the litigation and his hours will be reduced from 36.1 to 29.1.

Turning to Defendants' objections, they first object to the number of telephone calls, emails, and meetings with Plaintiff. A review of the frequency and length of these interactions does not reveal unreasonable practices.

Second, Defendants argue that Mr. Mirsky undertook an excessive amount of legal research given the relative simplicity of this case and his many years of experience in employment law. Also, Defendants contend that it was inappropriate for Mr. Mirsky to bill his hourly rate to convert Plaintiff's time sheets when he has a paralegal at his disposal. (ECF No. 35, at 19-20).

According to the time records, Mr. Mirsky spent fifteen hours performing legal research.[12]  Given the straightforward nature of this case and Mr. Mirsky's self-acknowledged experience in employment law matters, this is an unreasonably long amount of time and his hours will be reduced accordingly. Additionally, there is no reason why Mr. Mirsky needs to bring his legal expertise (and correspondingly high hourly rates) to bear on the job of deciphering Defendants' time-sheets.  While they go to the heart of Plaintiff's injury, it is a task that requires no legal skill and should have been assigned to Mr. Mirsky's paralegal.  Accordingly, Mr. Mirsky's hours for this period will be reduced from an adjusted 26.1 to 16.  Ms. Zangueneh will remain at 1.9 hours and Ms. Jones will be credited with 3.7 hours.

## 2.  Pleadings

Mr. Mirksy spent 12.9 hours drafting the original complaint, the amended complaint, and reviewing and analyzing the Defendants' answer.  Ms. Zangueneh spent 2.4 hours on the same tasks.  (ECF No. 34-1, at 7-8).  Defendants argue that there is no indication Plaintiffs subtracted time spent on their

---

[12] This number is not precise as some of the entries include tasks that were not legal research (*e.g.*, initial client meeting; factual investigation).  The hours worked for such entries are included in their entirety in the fifteen hour figure.

dismissed claims, nor is it reasonable to spend four hours amending a complaint where the amendments consist of deleting dismissed claims and correcting a defendant's name. (ECF No. 35, at 21).

Plaintiff's time records do not indicate that the hours spent on the pleadings before the dismissal of the wrongful termination claim on November 7, 2012 were spent exclusively on wage and hour claims. Therefore, those hours will be reduced by 25%. This leads to 10.2 hours for Mr. Mirsky and 2.2 hours for Ms. Zangueneh.

Further, Defendants are correct that spending four hours – divided between Mr. Mirsky (2.2 hours) and Ms. Zangueneh (1.8 hours) – on the amended complaint is unreasonable. In their own motion to amend the complaint, Plaintiff avers that they wish to amend the complaint to correct one of the Defendant's names due to a scrivener's error. (ECF No. 25). That was the only substantive change, along with deleting the two dismissed claims. (*See* ECF No. 25-2). It is reasonable to expect Ms. Zangueneh to handle this task in one hour. Consequently, Mr. Mirsky's credited hours for this stage will be reduced a further 2.2 hours to 8.0 hours total and Ms. Zangueneh's credited hours will be reduced a further 0.8 hours to 1.4 hours total.

### 3. Discovery

Plaintiff requests 6.1 hours for Mr. Mirsky's work on discovery. This work included preparing interrogatories for each Defendant; a request for document production; and requests for admission for each Defendant. (ECF No. 34-1, at 8). Plaintiff acknowledges that the discovery documents were not served, but they were "prepared so they could be sent out immediately upon the Court's issuance of a Scheduling Order." (*Id.*). Plaintiff argues that this was reasonable because at the time the discovery requests were being prepared, resolution of the claims appeared very unlikely and thus discovery could open at any moment and they needed to be prepared. (*Id.*).

The discovery work was reasonable and Plaintiff's request will be granted in full for this portion of the case. When Plaintiff was preparing discovery, it was foreseeable that discovery would open at some time in the future, even after Defendants filed a motion to dismiss part of Plaintiff's complaint. *See Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *8 (D.Md. Oct. 17, 2012) ("Counsel are not expected to assume that a case will settle and should not be penalized for planning ahead.").

### 4. Motions Practice

Mr. Mirsky requests 9.1 hours and Ms. Zangueneh requests 2.1 hours for this portion of the litigation, which included their review of Defendants' settlement offers and drafting a response to Defendants' motion to mediate. (ECF No. 34-1, at 9-10). Defendants object, arguing that it is excessive for Plaintiff to expend 2.7 hours crafting a two-page response to a motion to mediate, which was devoid of any legal analysis. (ECF No. 35-1, at 22-23).

Plaintiff's request will be reduced in two ways. First, Defendants' settlement offers were for all claims, including the ultimately unsuccessful and entirely distinct unlawful termination claim. Accordingly, work performed before November 7, 2012 will be reduced by 25%. Second, Plaintiff's work on their response to Defendants' motion to mediate will be reduced by half to reflect the short and straightforward nature of the response. (*See* ECF No. 22). Therefore, Mr. Mirsky will be granted 6.8 hours and Ms. Zangueneh 0.9 hours.

### 5. Alternative Dispute Resolution

Plaintiff's attorneys represent that they spent 26.5 hours in the ADR portion of this litigation, divided as follows: 24.7 for Mr. Mirsky and 1.8 for Ms. Zangueneh. During this phase, Plaintiffs prepared for mediation; drafted a letter to

Magistrate Judge Day outlining their case's strengths and weaknesses; participated in mediation; attempted to resolve the remaining fee issue with Defendants; and met with Plaintiff to explain the proposed settlement. (ECF No. 34-1, at 10-11). Defendants argue that, once again, Plaintiff has billed an excessive amount of hours. But a review of Plaintiff's time record leads to the conclusion that the hours worked was reasonable. The mediation was the most important part of this litigation as it lead to the ultimate resolution which avoided discovery, further motions, and perhaps a trial, all of which would have led to greater attorneys' fees.[13] The hours will be reduced by 25%, however, for work done before November 7, 2012 that was not exclusively on the wage and hour issues. Following the reduction, Mr. Mirsky will be awarded 24.4 hours of work and Ms. Zangueneh 1.8 hours.

### 6. Drafting of Fee Petition

Finally, Plaintiff's attorneys request 17.7 hours for Mr. Mirsky and 5.5 hours for Ms. Zangueneh for researching case law on attorneys' fees and preparing the fee request. Defendants' contend that they agreed to litigate only those fees incurred as

---

[13] Defendants point out that the entry "11/14/2012: SMZ: Additional Work on discovery requests: 1.50 hours" is more properly put under the "Discovery" heading. They are correct, but the billing remains reasonable and will be considered in computing reasonable hours for the ADR stage of litigation.

of the April 9, 2013 mediation date.  There was no agreement to litigate "fees on fees."  Defendants argue that Plaintiff is incurring excessive hours, keeping with their overarching position that Plaintiff has made this FLSA case much more complicated than it needed to be in order to extract a large bounty of attorneys' fees.  (ECF No. 35, at 24).

These objections are unpersuasive.  Defendants provide no support for their assertion that they only agreed to fees incurred up to the date of mediation and it is settled law in this circuit that a party can recover expenses incurred in preparing a motion for attorneys' fees.  *Ganey v. Garrison*, 813 F.2d 650, 652 (4th Cir. 1987).  On the other hand, a review of Plaintiff's time record indicates that the hours worked are not reasonable.  Particularly where counsel failed to provide support for the hourly rate, and the declaration and fee petition overlap, Mr. Mirsky will be credited with 10 hours.

Finally, Plaintiff requests an additional 6.8 hours for Mr. Mirsky and 2.3 hours for Ms. Zangueneh to account for their preparation of the Reply to Defendants' Opposition to Plaitniff's Motion for Attorneys' Fees and Costs.  (ECF No. 36-2, at 2).  Defendants filed a surreply challenging this request.  They repeat their argument that their settlement agreement was silent on fees but produce an email from Mr. Mirsky where he

says that "[o]ur fee petition will seek fees associated with preparing the petition." (ECF No. 40-1, at 1). According to Defendants, this indicates that Plaintiff is deviating from his prior position because the reply is not part of the petition.

This argument is unpersuasive. As discussed above, it is established law that attorneys can recover fees incurred when preparing their fee petition. Defendants cite no authority for the proposition that the reply is not part of that motion. A review of Plaintiff's billing in preparing the reply indicates that the hours worked are reasonable and not overly redundant, excessive, or unnecessary and will be granted in full.

### 7. Total Hours Worked

In sum, Mr. Mirsky is credited with 78.1 hours. Ms. Zangueneh is credited with 13.8 hours and Ms. Jones is credited with 3.7 hours. At their respective billing rates, this leads to a lodestar figure of $23,880.50.

### C. Additional *Johnson* Factors

No further adjustment of the lodestar is necessary. All of the *Johnson* factors were considered, many of which were subsumed in the rate and hour analysis. The other factors point in opposing directions and counsel against any further adjustment. This FLSA case was not complex, counseling in favor of reduction, but Plaintiff reached a large settlement, receiving

$28,000 to settle her FLSA claims which she valued at over $33,000 (ECF No. 36-1; ECF No. 32, at 4). Such a high degree of success counsels against reduction, especially where the Fourth Circuit has instructed that "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (internal quotations omitted). Defendants complain that Plaintiff unnecessarily put three members of the firm on this case, but in truth, this case was handled almost exclusively by Mr. Mirsky, who accounted for eight-two percent of the credited hours. In any event, it does not follow that simply because a contingent of lawyers worked on a case it is automatically suspect, even in a relatively simple case. The concern would arise only if that army of lawyers overlitgated the case beyond what is reasonable. Such objections are valid but are better evaluated in terms of how much time was spent on the matter, instead of how many lawyers contributed to the effort. Such an evaluation was done in the preceding sections, and Plaintiff's billable hours were reduced where it was appropriate. Finally, Defendants provide multiple cases where the court awarded a much smaller fee for a similarly simple case. (*See* ECF No. 35, at 27-28 (discussing *Nelson v. A&H Motors, Inc.*, No. JKS-12-2288, 2013 WL 388991 (D.Md. Jan. 30, 2013); *Azam-Qureshi v. The Colony*

*Hotel, Inc.*, 540 F.Supp.2d 1293 (S.D.Fla. 2008)). As highlighted by Plaintiff though, both of those cases involved much smaller claims where the litigation was not as protracted. As discussed above, a review of Plaintiff's time record does not reveal any overly redundant, excessive, or unnecessary billing beyond that which has been subtracted from the fee award.[14]

**D.    Costs**

Plaintiff's attorneys also seek $477.68 for litigation costs, including filing fees, process services, and postage. District courts have discretion to determine the costs that will be taxed in FLSA cases. *Roy v. Cnty. of Lexington, S.C.,* 141 F.3d 533, 549 (4th Cir. 1998). Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988). Here, the expenses requested by Plaintiff's attorneys appear to be reasonable and typical. Defendants have not objected to an award of costs and they will be awarded in full.

_____

[14] To the extent Defendants wish to use their fees incurred as a tool of comparison, they will not be considered as it is not relevant to an examination of an opposing party's fee request. *Nelson*, 2013 WL 388991, at *2 n.4.

## III. Conclusion

Plaintiff's motion for attorneys' fees and costs will be granted in part and denied in part. Judgment will be entered in favor of Plaintiff and against Defendants for the amount of $24,358.18. Defendants also requested that the court provide for extended payment terms because they are a small business. Plaintiff opposes this request and seeks an order directing payment in ten (10) days. Once a judgment is entered, an automatic fourteen (14) day stay is in effect pursuant to Federal Rule of Civil Procedure 62(a). Post-judgment interest accrues pursuant to 28 U.S.C. § 1961. The court declines to make any adjustments. A separate order will follow.


                                      /s/
                            DEBORAH K. CHASANOW
                            United States District Judge